**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PETER JOE RIVERA,                  :
                                   :     Civil Action No. 05-3385(FSH)
                Petitioner,        :
                                   :
                v.                 :     **OPINION**
                                   :
GRACE ROGERS, et al.,              :
                                   :
                Respondents.       :


**APPEARANCES:**

     PETER JOE RIVERA, Petitioner <u>Pro</u> <u>Se</u>
     P.O. Box 699
     Kearny, New Jersey 07032

     DAVID L. DACOSTA, ESQ.
     Office of the New Jersey Attorney General
     25 Market Street
     P.O. Box 112
     Trenton, New Jersey 08625
     Counsel for Respondents

**HOCHBERG**, District Judge

     This matter is before the Court on Petitioner Peter Joe Rivera's petition for habeas corpus relief under 28 U.S.C. § 2254. For reasons discussed below, the petition for habeas corpus relief will be denied for lack of merit.

I.   BACKGROUND

A.   Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its December 28, 2004 per curiam Opinion on petitioner's consolidated direct appeals from his original commitment and continued commitment under the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 to 30:4-27.38:

> P.J.R. is a fifty-eight year old former candy store owner and corrections officer.  In May of 1990, appellant was under investigation for the sexual assault of a 35-year-old mentally retarded woman, J.B., in his candy store. This investigation did not lead to a trial because the victim died of leukemia.
>
> However, in the course of the investigation, authorities learned that P.J.R. had been sexually assaulting his girlfriend's then sixteen-year-old daughter, A.J., for nine years.  For those offenses, appellant was charged under indictment number 90-09-07100-I with two counts of sexual assault, N.J.S.A. 2C:14-2b (counts one and three); aggravated sexual assault, N.J.S.A. 2C:14-2a(1)(count two); child abuse, N.J.S.A. 9:6-3 (count four); criminal sexual contact, N.J.S.A. 2C:14-3b (count five); lewdness, N.J.S.A. 2C:14-4a (count six); and two counts of endangering the welfare of a child, N.J.S.A. 2C:24-4a (counts seven and eight).  Authorities, around this same time, also discovered that P.J.R. had been sexually assaulting his girlfriend's other daughter, A.E., then nineteen years old for seven years.  For those offenses P.J.R. was charged under indictment number 92-01-0030-I with: aggravated criminal sexual contact, N.J.S.A. 2C:14-3a (count one); and endangering the welfare of a child, N.J.S.A. 2C:24-4a (count two).

Before trial on the above charges commenced, four other girls, approximately fourteen years old, reported to authorities that P.J.R. had sexually abused them in his candy store.  Furthermore, P.J.R. was charged with an additional sexual assault on a 12-year-old girl, T.T., in his candy store while free on bail.  All resulting charges were dismissed when a jury convicted P.J.R. on March 31, 1992, on some of the charges listed in indictment 90-09-0710-I and both charges in indictment 92-01-0030-I.  With respect to indictment number 90-09-0710-I, P.J.R. was found guilty of counts one, four, five, and eight.

P.J.R. was sentenced on July 31, 1992, to a ten-year term for the convictions resulting from indictment number 90-09-0710-I, and to a consecutive four-year term, with a two-year parole bar as a result of the convictions from indictment number 92-01-0030-I.  Appellant refused to cooperate with the Adult Diagnostic Treatment Center ("ADTC") evaluation.  Consequently, he served the imposed sentence in the general prison population, where he was disciplined for certain prison infractions.

P.J.R. was set to "max out" his sentence on or about November 1, 2001.  On October 16, 2001, the State filed a petition for civil commitment under the SVPA.  P.J.R. was temporarily committed.

On November 8, 2001, the commitment hearing was held.  At the hearing, Michael McAllister, D.O., testified for the State that P.J.R. had been diagnosed with pedophilia, attracted to females; exhibitionism; fratuism; voyeurism; and features of transvestism, which was inadvertently omitted from his written report.  He further testified that P.J.R. continues to suffer from these diagnoses.  He noted that P.J.R.'s sexual perversion is quite pervasive.  At the evaluation P.J.R. "demonstrated minimization and denial in talking about these events."  P.J.R. denied that the incidents ever happened.  Dr. McAllister found P.J.R.'s refusal to submit to treatment "particularly worrisome" because:

> it allows the sexual perversion to continue
> to exist.  It allows it to be unmoderated [sic]
> by civilizing influences or -- or revising the
> urges or ideas or revising the fantasies.  It
> also allows the -- the failure of civilizing and
> socializing and conscience developments, concern
> for the victims to continue unchanged as well.

3

Additionally, Dr. McAllister performed a new MnSOST-R; P.J.R. received a score of eleven.  Ultimately, Dr. McAllister said, "not only is [P.J.R.] more likely [to reoffend] then [sic] not, but that he is highly likely to reoffend."

P.J.R. also testified at the hearing.  He denied ever abusing either A.J. or A.E.  P.J.R. claimed he had never met A.E.  P.J.R. also testified that J.B. had made sexual advances towards him, but claimed that he found out she had AIDS[1] and refused her advances, so she filed sex abuse charges.  P.J.R. also claimed that the other girls who filed charges against him did so because he was "the only Puerto Rican in the neighborhood with a grocery store, there's a lot of racism and prejudice going in the neighborhood. Nobody wanted me to have this store."  He ended his testimony by requesting to be sent back to Puerto Rico.

At the hearing, the judge admitted P.J.R.'s presentence report ("PSR"), a multiple charges sheet, three police reports, and Dr. McAllister's report.  Dr. McAllister testified that the PSR, charges sheet, and police reports are the type of sources that members of the medical profession reasonably rely on and that he used them to better understand both the situation and P.J.R.

The judge noted that P.J.R. was found guilty of sexually violent offenses by a jury, bringing him within the purview of SVPA.  He found Dr. McAllister to be a credible and qualified expert witness, while finding P.J.R. unbelievable. Ultimately, the judge found that P.J.R. has a "mental abnormality and a personality disorder, that both of them affect all three areas referred to in the statute: cognitive, emotional, and volitional."  As a result, the judge found that P.J.R. is "highly likely to engage in acts of sexual violence if released at the present time."  A review hearing was set for November 1, 2002.

P.J.R. filed a notice of appeal on December 10, 2001.  He claimed the court erred in admitting the documents upon which the expert witness relied, he had a right to a jury trial at the sexually violent predator commitment hearing, the SVPA was wrongly applied, and the State failed to prove by clear and convincing evidence that he is a sexually violent predator in need of civil commitment.

---

[1]  J.B. had leukemia.

4

While the appeal was pending, P.J.R.'s first review hearing was held on January 3, 2003.[2]  Pogos Voskanian, M.D. and Natalie Barone, Psy.D. testified.  Dr. Voskanian testified that P.J.R. "Does not see himself as a sex offender." "[T]here is no progress in terms of his sex offender treatment because he sees himself as a political prisoner. He's not engaged into any groups . . . .  He's often times described as treatment resistant or not participating or addressing systemic issues rather than his own issues."  Dr. Voskanian diagnosed the same illnesses as Dr. McAllister and placed P.J.R. at high risk for reoffending because:

> if somebody does certain behaviors and denies them, his risk is actually worse -- higher because he has a great deal of defiance towards the system, he does not see himself as an individual with issues regarding sexual offenses.  So, his risk is unchanged and even higher than at the time he was committed.

Dr. Barone testified that the Treatment Progress Review Committee ("TPRC") evaluated P.J.R. and unanimously recommended that P.J.R. remain in phase II of his treatment. At the evaluation, P.J.R. described his sexual relationship with A.J. as reciprocal and consensual, even though it began when she was seven years old, and denied all of the other sex offense complaints that had been lodged against him, claiming that he is a "'political prisoner being held captive by the Department of Corrections.'" He also acknowledged that he is refusing to participate in treatment.

The judge issued his findings and opinion on June 27, 2003. He found that "police reports, pre-sentence reports, prior psychiatric evaluations, statements of witnesses, statements of victims, statement by the respondent are all the types of documents that experts utilize in creating evaluations for the purpose of predicting future dangerousness." Ultimately, the judge held that P.J.R. should continue his civil commitment, finding

> by more than clear and convincing evidence that there is more than an ample basis for the opinions that have been expressed here, either in reports or in testimony

---

[2]  Although scheduled for November 1, 2002, the review hearing was rescheduled and held on January 3, 2003, at the request of the public defender.

> . . . that [P.J.R.] suffers from [mental conditions]
> that . . . clearly predispose him to engage in acts of
> sexual violence.

> The judge went on to say that P.J.R. "Has a serious
> inability to controlling his serious -- his deviant behavior
> and that if he were to be released . . . he would be
> involved in similar activity."

(Exhibit 1, December 28, 2004 Appellate Division Opinion, at pp.
1-8).

B. Procedural History

In 1992, judgments of conviction were entered against
petitioner Peter Joe Rivera ("Rivera"), on several offenses
against minors, A.J. and A.E., including sexual assault, child
abuse, criminal sexual contact, and endangering the welfare of a
child. Rivera was sentenced to an aggregate prison term of 14
years to be served in the general prison population because
Rivera refused to cooperate with the Adult Diagnostic and
Treatment Center ("ADTC") for sex offenders in Avenel.

In October 2001, shortly before Rivera's scheduled release
from prison, the State filed a petition for involuntary civil
commitment pursuant to the SVPA, N.J.S.A. 30:4-27.24 et seq. A
commitment hearing was held on November 8, 2001, and at the
conclusion, the judge ordered that Rivera be committed for one
year.

Rivera filed a direct appeal from the commitment on December
10, 2001. While that appeal was pending, Rivera had his
subsequent annual review hearing on January 3, 2003, at his

public defender's request, rather than as originally scheduled on November 1, 2002.  Rivera filed another appeal, which was consolidated with his appeal from the initial commitment order. On December 28, 2004, the Appellate Division affirmed the orders of commitment.  Rivera did not petition the Supreme Court of New Jersey for certification.

Rivera filed this federal habeas petition on or about July 5, 2005.  He also filed several supplemental briefs and addendums in support of his habeas petition.[3]  (Docket Entry Nos. 10, 11, 12 and 14).  Respondents answered the petition on May 5, 2006.

## II.  STATEMENT OF CLAIMS

In challenging his commitment, Rivera raises the following claims for habeas relief:

Ground One: The state court erred in admitting hearsay evidence.

Ground Two: Petitioner was denied the right to a jury trial.

Ground Three: Petitioner's commitment under the SVPA violates the Ex Post Facto Clause.

Ground Four: Petitioner received ineffective assistance of counsel in violation of his Sixth Amendment rights.

---

[3]  Rivera also filed a motion for appointment of counsel and a motion for discovery (Docket Entry Nos. 3 and 20), which were denied by this Court on August 31, 2005 and August 16, 2006, respectively.  (Docket Entry Nos. 6, 7, and 22).

Ground Five: Commitment was not based on clear and convincing evidence and the state court erred in basing its decision to continue petitioner's commitment under the SVPA on an improper expert report.

The respondents answered the petition asserting that the petition should be dismissed because Rivera failed to exhaust his state court remedies. The respondents also contend that the decisions of the state court were not contrary to clearly established federal law, nor were the decisions based upon an unreasonable determination of the facts. Finally, respondents argue that petitioner's ineffective assistance of counsel claim is without merit.[4]

This Court has reviewed the state court record submitted and finds that Rivera has raised all asserted claims before the New Jersey state courts, with the exception of his claim based on ineffective assistance of counsel. To the extent that this claim

---

[4] Respondents also argue that Peter C. Harvey, former New Jersey Attorney General, is not a proper respondent in this habeas petition, as he is not a custodian of petitioner for purposes of the habeas statute. (Resp. Brief in Opposition to the Petition, Point I, pp. 9-10). Indeed, the proper respondent in a habeas petition is the warden of the facility in which the petitioner is incarcerated. See Rules Governing Section 2254 Cases, Rule 2, Advisory Committee Notes; see also Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994). In this case, the proper respondent is Grace Rogers, the Administrator of the Special Treatment Unit ("STU") in Kearny, New Jersey, where petitioner presently is housed. Thus, Mr. Harvey will be dismissed from this action.

has not been presented, this Court will excuse the exhaustion requirement, as the claim is not meritorious.  See 28 U.S.C. § 2254(b)(2); Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

(d)  An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment
of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim -

(1)  resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2)  resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  Williams, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  Id.  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of [the petitioner's] case."

Id. at 413.  Habeas relief may not be granted under the
"unreasonable application" condition unless a state court's
application of clearly established federal law was objectively
unreasonable; an incorrect application of federal law alone is
not sufficient to warrant habeas relief.  Id. at 411.  See also
Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied,
532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171
F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v.
Brennan, 528 U.S. 824 (1999).

     Consonant with Williams, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  Werts, 228 F.3d at 197.

     This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  Id.  AEDPA prohibits such de novo review.

Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and

convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.  <u>ANALYSIS</u>

The Court will examine each of petitioner's claims on the merits, pursuant to the standard of review as recited above.

A.  <u>Right to a Jury Trial</u>

Rivera asserts that he has a right to a jury trial. However, he claims that this right is protected under the New Jersey Constitution and state law, and is "well entrenched in the 'SVP' statutes."  (Petition, Ground B).  Rivera does not raise a federal constitutional violation in this habeas petition, but it appears from the New Jersey Appellate Division's Opinion that petitioner did argue violation of a federal constitutional right on direct appeal.

The New Jersey Appellate Division found that petitioner's arguments "cannot withstand scrutiny."  In particular, the court held:

> This issue was addressed in J.H.M., supra, 367 N.J. Super. at 606-07.  We said that "[f]or a committee to have a right to a trial by jury, 'it must arise under a statute or our State Constitution.'"  Id. at 606.  (quoting Insurance Co. Of N. Am. V. Anthony Amadei Sand & Gravel, Inc., 162 N.J. 168, 175 (1999)).

13

First, the SVPA does not include the right to a jury trial. A committee has the right to: "be represented by counsel"; "present at the court hearing"; "present evidence"; "cross-examine witnesses"; and "a hearing in camera."  <u>N.J.S.A.</u> 30:4-27.31.

Second, the State constitution does not provide a committee the right to a jury trial.  Article I, paragraph nine provides: "The Legislature may authorize the trial of the issue of mental incompetence without a jury."  Paragraph nine also preserves "the right to a jury trial only for those cases where this right existed at the time of the adoption of the State constitutions in 1776, 1844, or 1947, or where the right was created with the enactment of the State constitution." <u>J.H.M.</u>, <u>supra</u>, 367 N.J. Super. at 606-07.  Both the 1844 constitution and the 1947 constitution have been interpreted to preclude the right to a jury trial in a commitment hearing.  <u>Id</u>. at 607; <u>see</u> <u>Stizza v. Essex County Juvenile and Domestic Relations Court</u>, 132 N.J.L. 406, 408-09 (E. & A. 1945)(finding no right to a jury trial in a commitment hearing under the 1844 State constitution; <u>Insurance Co. Of N. Am.</u>, <u>supra</u>, 162 N.J. at 175-76 (finding no right to a jury trial in a commitment hearing under the 1947 State constitution); <u>In the Matter of the Civil Commitment of G.G.N.</u>, 372 N.J. Super. 42, 45 (App. Div. 2004)(adhering to the no right to a jury trial determination made in <u>J.H.M.</u>).

Additionally, in <u>J.H.M.</u> we concluded that the "New Jersey rule is consistent with that of other jurisdictions."  367 N.J. Super. at 607 (citing <u>Poole v. Goodno</u>, 335 F.3d 705, 709 (8th Cir. 2003)(Minnesota law); <u>State ex rel. Pearson v. Probate Court</u>, 287 N.W. 297, 303 (1939)(Minnesota law); <u>In re Moulton</u>, 77 A.2d 26, 28 (1950)(New Hampshire law); <u>State v. Dixon</u>, 393 P.2d 204, 206 (1964)(Oregon law)).  Moreover, differences between substance and procedure in civil commitments among different jurisdictions is the essence of federalism, and states must be free to develop solutions to the various problems they face.  <u>Addington v. Texas</u>, 441 U.S. 418, 431, 99 S.Ct. 1804, 60 L. Ed.2d 323 (1979).

Furthermore, the Federal constitution provides no right to a jury trial in a commitment proceeding.  <u>U.S. v. Sahhar</u>, 917 F.2d 1197, 1204 (9th Cir. 1990)(stating that the Federal commitment procedures do not require trial by a jury); <u>Poole</u>, <u>supra</u>, 335 F.3d at 710-11 (finding that the use of a jury in commitment procedures is at the discretion of the state).

(New Jersey Appellate Division Opinion, filed December 28, 2004, at pp. 14-16).

It is clear that under New Jersey law, there is no right to a jury trial in SVPA hearings, as determined by the Appellate Division in petitioner's direct appeal. See In re the Commitment of J.H.M., 367 N.J. Super. 599, 606-08 (App. Div. 2003), certif. denied, 179 N.J. 312 (2004)(finding that persons subject to commitment under the SVPA are not entitled to more constitutional protections than afforded by the statute, and noting that the SVPA statute does not provide for jury trials), disapproved of on other grounds in, In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 493 (App. Div. 2005).

The United States Supreme Court has not decided the issue of whether due process requires a jury trial in civil commitment proceedings,[5] and has not incorporated the Seventh Amendment right to a jury for such cases.[6]  However, the Supreme Court has

---

[5]   But see United States v. Sahhar, 917 F.2d 1197, 1206-07 (9th Cir. 1990)(due process does not provide right to jury trial in civil commitment proceedings), cert. denied, 499 U.S. 963 (1991).

[6]   The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court in the United States, than according to the rules of the common law."  The Seventh Amendment right to a jury trial does not apply to state court proceedings.  See City of Monterey v. Del Monte Dunes at Monterey, 526 U.S. 687, 719 (1999).

explained that § 2254(d) directs that if a state court "reached a conclusion 'opposite to that reached by [the Supreme Court] on a question of law' or confronted 'facts that are materially indistinguishable from a relevant Supreme Court precedent' and reached the opposite result, then its decision is contrary to clearly established law." Poole v. Goodno, 335 F.3d 705, 708 (8th Cir. 2003)(quoting Williams v. Taylor, 529 U.S. 362, 405 (2000).  The Court of Appeals for the Eighth Circuit noted this, and recently held that because there is no "clearly established" Supreme Court law which would require a jury trial in cases dealing with civil commitment of sexual predators, a habeas petition pursuant to 28 U.S.C. § 2254 asserting such an argument must be denied.  See Poole, 335 F.3d at 710-711.

The Eighth Circuit also pointed out that the Supreme Court has permitted states to make their own procedural rules for commitment cases.  See id. at 711 (citing Addington v. Texas, 441 U.S. 418, 431 (1979).  The Eighth Circuit noted that, "[a]lthough the Court did not speak directly about juries in Addington, it certainly left it open to states to employ their own preferred procedures.  It ruled that a reasonable doubt standard is not required to meet the 'constitutional minimum' for civil commitments, and the same type of reasoning could be applied to the type of jury trial issue we face." Id. at 709.

16

This Court agrees with the Eighth Circuit; that is, in order to obtain the writ of habeas corpus, pursuant to 28 U.S.C. § 2254, Rivera must demonstrate the state court decision denying his claim that he is entitled to a jury trial "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). As was the case in the Eighth Circuit, Rivera has not met this standard on this issue.

Therefore, where there is no clearly established Supreme Court law holding that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury trial in such cases, see Poole, 335 F.3d at 710-11, this Court concludes that there is no federal constitutional right to a jury trial in SVP civil commitment proceedings and petitioner's claim for habeas relief will be denied accordingly.

B.   No Ex Post Facto Violation

In his third claim for habeas relief, Rivera argues that his commitment under the SVPA violates the constitutional proscription against ex post facto laws. Rivera raised this claim on direct appeal.

The New Jersey Appellate Division rejected petitioner's claim, finding that:

> The double jeopardy and ex post facto clauses of the State and Federal constitutions apply only to criminal statutes

17

where punishment is imposed.  <u>J.H.M.</u>, <u>supra</u>, 367 N.J. Super.
at 609; <u>Hendricks v. Kansas</u>, 521 U.S. 346, 361, 117 S.Ct.
2072, 2082, 138 L. Ed.2d 501 (1997).

> We must initially ascertain whether the legislature
> meant the statute to establish 'civil' proceedings . .
> . . [W]e will reject the legislature's manifest intent
> only where a party challenging the statute provides
> 'the clearest proof' that 'the statutory scheme [is] so
> punitive either in purpose or effect as to negate [the
> State's] intention' to deem it 'civil.'

> [<u>Hendricks</u>, <u>supra</u>, 521 U.S. at 361, 117 S.Ct. 2081-82.]

The SVPA is clearly civil and non-punitive in nature.  <u>In re
Commitment of W.Z.</u>, 173 N.J. 109, 119-21 (2002).  The SVPA
was enacted by the Legislature "in recognition of the need
for commitment of those sexually violent predators who pose
a danger to others should they be returned to society."
<u>N.J.S.A.</u> 30:4-27.25(c).  The SVPA requires the State to
provide housing, separate from the prison population,
treatment, and regular review hearings.  <u>N.J.S.A.</u> 30:4-
27.34.  Further, "[t]he SVPA is virtually identical to the
language of the Kansas SVPA challenged [and upheld] in
<u>Hendricks</u>, and follows the pattern for such legislation that
has been enacted by numerous other states."  <u>W.Z.</u>, <u>supra</u>,
173 N.J. at 121.  The SVPA was enacted to protect the
citizens of New Jersey and provide treatment for those
suffering from mental abnormalities, which may cause them to
commit additional acts of sexual violence.  <u>N.J.S.A.</u> 30:4-
27.25(a).  Because the SVPA is not criminal or punitive in
nature, it does not violate the double jeopardy or ex post
facto clauses of the State or Federal constitutions.

(New Jersey Appellate Division Opinion, filed December 28, 2004,

at pp. 12-13).

Here, Rivera argues that his civil commitment is an imposed

punishment that violates his <u>ex post facto</u> rights pursuant to the

fundamental fairness doctrine.  However, the <u>Ex Post Facto</u> Clause

cannot be violated without the imposition of punishment.

Moreover, constitutional prohibitions against retroactive

punishment can only apply to criminal legislation.  See Kansas v. Hendricks, 521 U.S. 346 (1997); Seling v. Young, 531 U.S. 250 (2001)(holding that a state's legislative and judicial determination that its sexually violent predator statute was civil rather than criminal precluded double jeopardy and ex post facto challenges by petitioners committed under said statute).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington statutes that were examined and upheld by the United States Supreme Court in Hendricks and Seling, respectively.  Like those state statutes, the New Jersey SVPA does not establish criminal proceedings.  Further, New Jersey has formally determined that the SVPA is a civil enactment, satisfying the requirements of Hendricks and Seling.  See N.J.S.A. 30:4-27.24 (New Jersey Assembly Appropriations Committee Statement stating that the SVPA "establishes a civil procedure for the involuntary commitment of sexually violent predators").  Therefore, because the New Jersey SVPA is a civil statute as previously determined by the State of New Jersey, Rivera is precluded from asserting an ex post facto claim under the fundamental fairness doctrine.  As Rivera has not demonstrated a federal constitutional violation, his claim for habeas relief will be denied accordingly.

C.  <u>Admission of Hearsay Evidence</u>

Next, Rivera argues that the state court erred in admitting
hearsay evidence at the commitment hearings, and allowing expert
evidence relying on such hearsay evidence.  In particular, Rivera
objects to the admission of his presentence reports, which
included a statement by the victim A.E.; a multiple charge sheet,
which included a statement by victim A.J.; three police reports,
which included statements of several other girls not included in
the indictments; and the expert report of Dr. McAllister, which
contained information drawn from all of these documents.  Rivera
contends that admission of this hearsay evidence was improper
because it was admitted for the purpose of proving the facts
asserted in the State's commitment petition.

Rivera raised this claim on direct appeal from his
commitment order.  The New Jersey Appellate Division stated:

> We are satisfied that no error "clearly capable of producing
> an unjust result" occurred in this context.  <u>R.</u> 2:10-2.
>
>> While out-of-court statements used to prove the truth
>> of the matter asserted are inadmissible hearsay, <u>see</u>
>> <u>N.J.R.E.</u> 802, an expert who substantially relies on
>> hearsay evidence for his or her opinion may testify at
>> trial as long as the hearsay information "[i]s of a
>> type reasonably relied upon by experts in the
>> particular field in forming opinions or inferences upon
>> the subject." [<u>In re Civil Commitment of J.H.M.</u>, 367
>> N.J. Super. 599, 612 (App. Div. 2003), <u>certif.</u> <u>denied</u>,
>> 179 N.J. 312 (2004)(quoting <u>N.J.R.E.</u> 703 and citing
>> Biunno, <u>Current N.J. Rules of Evidence</u>, comment 6 on
>> <u>N.J.R.E.</u> 703 (2002).]
>
> The evidence reasonably relied upon by experts in forming
> opinions need not be admissible.  <u>J.H.M.</u>, <u>supra</u>, 367 N.J.

Super. at 612 (citing <u>State v. Vandeweaghe</u>, 351 N.J. Super. 467, 480 (App. Div. 2002)).  However, any hearsay evidence relied upon is not admissible substantively to prove the truth of the matter asserted.  <u>J.H.M.</u>, <u>supra</u>, 367 N.J. Super. at 612.

While P.J.R. claims that the judge admitted the documents in question as substantive evidence to prove as fact the statements contained therein, the judge stated specifically that was not the case.  He said to the prosecutor, "if you want to submit them strictly as documents upon which they're relied without —- without submitting them to prove the truth of what they contain, I'll -- I'll mark them for those limited purposes, but not to prove that he did the things that are in there."  Dr. McAllister then testified that the documents in question are the type of information that experts in the field normally rely on in formulating their opinions.

We note that much of the hearsay evidence of which P.J.R. complains, including A.E.'s and A.J.'s statements, was established as fact by the jury that found him guilty of several sexually violent crimes.  The judgments of conviction conclusively establish P.J.R.'s prior convictions.  Trial transcripts were produced here that corroborated sufficiently the circumstances set forth in the PSR [presentence report].  Moreover, at the time P.J.R. was sentenced, he had a right to object to the accuracy of the PSR.

A trial judge's evidentiary rulings are reviewed on an abuse of discretion standard.  <u>State v. Brown</u>, 170 N.J. 138, 147 (2001).  Applying that standard here, we cannot conclude that "error clearly capable of producing an unjust result" occurred.  <u>R.</u> 2:10-2.

(New Jersey Appellate Division Opinion, filed December 28, 2004,

at pp. 10-12).

Thus, it is clear that the New Jersey courts in this

instance found that the hearsay evidence at issue was utilized

only to apprise the hearing judge of the basis for the expert

opinions, and was not admitted for the purpose of proving the

truth of the statements contained therein.  This Court finds no error in the admission of such evidence for the limited purpose stated.

Even if this Court were to assume arguendo that the hearing judge did err in permitting the alleged hearsay evidence, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases.  Generally, matters of state law and rules of procedure and evidence are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Federal courts must afford the states deference in its determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986). Thus, it is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22,

22

1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").  See also United States v. Agurs, 427 U.S. 97, 108 (1976)(For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial).

Accordingly, the appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark , 478 U.S. 570, 578 n.6 (1986)).

23

Applying these principles to the instant case, this Court finds that Rivera's claim is not the "rare" instance where evidentiary rulings have violated his rights to due process.  The record demonstrates that the commitment hearing process was fundamentally fair.  The expert witnesses were subject to cross-examination, and the hearsay evidence at issue, namely the statements by the victims, had been established as fact by the jury that found petitioner guilty of the sexually violent crimes, as well as by the judgments of conviction and trial transcripts, which corroborated the presentence report.

Moreover, even if the hearing judge's evidentiary rulings were in error, there was sufficient evidence for the judge to conclude by clear and convincing evidence that the Rivera was a sexually violent predator in need of further confinement.  <u>See</u> this Opinion at Section V.D., <u>infra</u>.  As found by the New Jersey Appellate Division, petitioner has a history of sexually violent crime convictions, has demonstrated serious difficulty in controlling his behavior and mental conditions, and has refused to participate in sex offender treatment, sufficient to show that he was likely to engage in future acts of sexual violence, if not confined.  (Appellate Division Opinion, dated December 28, 2004, at pg. 16).

Therefore, Rivera has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

D.  <u>Commitment Orders Supported by Clear and Convincing Evidence</u>

Rivera further claims that his commitment and continuing commitment orders are not supported by clear and convincing evidence.  He asserts that Dr. Voskanian's report incorrectly diagnosed petitioner with psychiatric disorders that did not fit requisite criteria for such diagnoses,[7] and that Dr. Voskanian failed to account petitioner's treatment progress.[8]

New Jersey courts have found the "clear and convincing" standard an appropriate standard in civil commitment proceedings

_____

[7]  Rivera argues that Dr. Voskanian diagnosed him with paraphilias such as voyeurism, exhibitionism, and transvestism, but provided no evidence that petitioner had engaged in such behavior or had fantasies that satisfied the criteria for these disorders.  Instead, Rivera claims that Dr. Voskanian relied on the presentence reports, Dr. McAllister's report, and the State's petition for commitment.

[8]  Rivera also contends that Dr. Voskanian selectively read from River's treatment notes and failed to mention positive treatment notes in his assessment of petitioner.  The positive notes allegedly reflected the fact that petitioner regularly attended treatment and contributed to group discussion, and had an above average rating in an anger management module and an average rating for completion of assignments.

and SVPA cases.  See In re Commitment of W.Z., 173 N.J. 109, 133-34 (2002); In re Commitment of J.H.M., 367 N.J. Super. at 607.

In fact, the "clear and convincing" standard was approved for civil commitment proceedings by the United States Supreme Court in Addington v. Texas, 441 U.S. 418, 432-33 (1979).  In that case, the Supreme Court reasoned that: "the reasonable-doubt standard is inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment."  Id. at 432.

Here, Rivera essentially argues that the State did not prove by clear and convincing evidence that he is a sexually violent predator in need of continuing civil commitment.  On direct appeal to the New Jersey Appellate Division, that court found:

> Finally, we reject P.J.R.'s claims that the State failed to prove by clear and convincing evidence that he is a sexually violent predator in need of involuntary civil commitment and continues to be in need of such a commitment.  There was clear and convincing evidence that P.J.R. has serious difficulty controlling his behavior "such that it is likely" that he will not control his sexually violent behavior and will reoffend.  W.Z., supra, 173 N.J. at 130.

> Here, a jury found P.J.R. guilty of several sexually violent crimes.  He has been diagnosed with pedophilia, exhibitionism, fratuism, voyeurism, and transvestism. P.J.R. has to date refused sex offender treatment, and thus, has made no progress in accepting and controlling his mental conditions.  Additionally, the doctors indicate that because P.J.R.'s sexually violent behavior has gone untreated, he is more likely to offend now than when he was first committed.

> Considered as a whole, this evidence clearly indicates that P.J.R. has serious difficulty controlling his sexually

violent behavior, and placing him back into the community
will create a situation in which he is highly likely to
reoffend.

A court reviewing a civil commitment follows an analysis
that is similar to that employed by the commitment judge.
Ibid.  "Once committed under the SVPA, an individual should
be released when a court is convinced that he or she will
not have serious difficulty controlling sexually violent
behavior and will be highly likely to comply with the plan
for sage reintegration into the community."  Ibid.  When an
appellate court reviews a commitment hearing, the hearing
judge should be given the "'utmost deference' and modified
only where the record reveals a clear abuse of discretion."
In re Commitment of J.P., 339 N.J. Super. 443, 459 (App.
Div. 2001)(quoting State v. Fields, 77 N.J. 282, 311
(1978)).  There was no abuse of discretion in the initial
decision to commit P.J.R. or the review decision to continue
his commitment.

(New Jersey Appellate Division Opinion, filed December 28, 2004,

at pp.16-17).

Again, this Court is constrained by the federal habeas

statute to apply a "presumption of correctness to the factual

determinations made by the state court."  28 U.S.C.

§ 2254(e)(1).  Rivera has not presented clear and convincing

evidence as required to overcome this presumption as to the state

court's factual findings.  See Duncan, 256 F.3d at 196 (citing 28

U.S.C. § 2254(e)(1).  At most, Rivera complains that Dr.

Voskanian failed to testify about petitioner's efforts to

participate in treatment programs.  However, he admits that Dr.

Voskanian referenced petitioner's attendance at treatment groups

on cross-examination.  Both Dr. Voskanian and Natalie Barone,

Ph.D., a member of petitioner's Treatment Progress Review

27

Committee ("TPRC"), testified that petitioner regarded himself as a political prisoner and exhibited a resistance to treatment. Dr. Barone also testified that the TPRC unanimously recommended that Rivera remain in phase II of his treatment.  There was testimony that petitioner continues to deny the sexual offense complaints against him and that he described his sexual relationship with A.J. as consensual and reciprocal.  Thus, the hearing judge found "by more than clear and convincing evidence that there is more than an ample basis for the opinions that have been expressed here, either in reports or in testimony that [petitioner] suffers from [mental conditions] that ... clearly predispose him to engage in acts of sexual violence" and that petitioner "has a serious inability to controlling ... his deviant behavior and that if he were to be released" he would likely reoffend.  (Appellate Division Opinion, filed December 28, 2004, at pg. 8).

Moreover, this Court concludes that Rivera has not shown, as required by 28 U.S.C. § 2254(d), that the decisions of the state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the courts' decisions were "objectively unreasonable."  Accordingly, this ground for habeas relief will be denied.

D.   Ineffective Assistance of Counsel Claims

Finally, Rivera claims that his counsel was ineffective in violation of the Sixth Amendment, because counsel refused to file a motion to the New Jersey Supreme Court for certification on appeal when there was a "special issue of law that needed to be resolved."  (Petition, ¶ 12D, Ground Four).[9]

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

---

[9]  This ineffective assistance of counsel claim was not presented by petitioner for state court review, and is thus unexhausted.  Nevertheless, because the claim is clearly without merit, the Court will deny it pursuant to 28 U.S.C. § 2254(b)(2).

counsel's assistance was reasonable considering all the

circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel,

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Rivera's claim of ineffective counsel relates to his appellate counsel.  The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  Evitts v. Lucey, 469 U.S. 387 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability,

31

but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Rivera argues that his appellate counsel was deficient because he refused to file a petition for certification with the New Jersey Supreme Court "when there was a special issue of law that needed to be resolved."  Respondents note that petitioner has not identified the "special issue of law that needed to be resolved."  Moreover, it is plain from review of the Appellate Division's ruling that Rivera's claims on appeal were completely devoid of merit.  Thus, even if counsel could be said to be deficient in refusing to file a certification to the New Jersey Supreme Court, there is no demonstrable prejudice.  Rivera shows no basis for this Court to find any reasonable probability that certification would have been granted on petitioner's meritless claims as raised on appeal.  Accordingly, this claim will be dismissed for lack of merit.

### IV.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For

the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.  An appropriate Order follows.


    /s/ Faith S. Hochberg
United States District Judge

Dated:  November 20, 2006

33